UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

     *Plaintiff,*

     v.                           Case No.  10-cr-152-wmc

JEREMY VISOCKY,

     *Defendant.*

## DEFENDANT'S MOTION TO SUPPRESS AND REQUEST FOR EVIDENTIARY HEARING[1]

Jeremy Visocky, by counsel, moves this Court to enter an order suppressing all evidence obtained by the government as a result of the illegal search and seizure of a safe belonging to Mr. Visocky.

### A.    Facts

Shortly after 11:00 p.m. on July 24, 2010, law enforcement responded to a report of a burglary at 1042 Erin Street, Apartment #1, in Madison, Wisconsin. (Exhibit 1 at ¶4; Exhibit 2)  After officers arrived at the location and secured the scene, Jason J. Amundson and Michelle E. Castronovo emerged from the residence

---

[1] Counsel requests an evidentiary hearing on this Motion only if the Court or the government deem it necessary.  Counsel believes the facts set forth in this Motion are undisputed and can, therefore, be stipulated.  If the government disputes any of these facts, then counsel seeks an evidentiary hearing.

and identified themselves to police as the individuals who had called for assistance. (Exhibit 3) According to Amundson and Castronovo, they did not reside at the residence.[2] Rather, they told officers that Mr. Viscoky, a friend of theirs, was the sole tenant of the first-floor flat and they had stopped by to let his dog out because he was working late. (Exhibit 1 at ¶ 21, 22)

Admundson and Castronovo explained to the responding officers that they had arrived at Visocky's residence as the burglary was in progress. (Exhibit 3) They reported entering the front of the residence at the same time a suspicious-looking unidentified male was approaching the side-door from a different direction. (*Id.*) According to Admundson and Castronovo, they entered the front door of the residence and were almost immediately confronted by an unidentifiable man brandishing a gun. (*Id.*) By the time law enforcement arrived on scene, the burglary suspect(s) had fled. (Exhibit 1 at ¶ 9)

Three law enforcement officers, Sergeant Wiering, Police Officer Dexter and Police Officer Boespflug, conducted a protective sweep of the residence.  (Exhibit 2) The officers entered the residence through the side-door that had been broken by the burglar(s).  (*Id.*)  It was at this point that the officers observed a safe "laying in the common entrance in front of Apartment 1 of 1042 Erin St." (*Id.*)  Police Officer

---

[2] When interviewed by police on August 12, 2010, Jason Amundson clarified that he was not a permanent resident of the apartment but that he was staying there temporarily and storing items in the basement. (Exhibit 4 at ¶ 3)

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

Dexter reported that the officers "immediately could see in the common area where the stairs go up to Apt No. 2[,] the door to Apt No. 1 and the door to the basement where there was a large green safe consistent with what [he knew from] experience to be a gun safe." (Exhibit 6 at 2)

Moving deeper into the ground-level apartment, officers observed in plain view drug paraphernalia, two weights, a green ammo case labeled "clips" with loose ammunition inside and an open blue backpack with additional clips and ammunition inside. (Exhibit 1 at ¶¶ 13, 14)

Officer Douglas, a K9 handler with the Madison Police Department, and her dog, Martie, had previously been called to the scene to assist with tracking the suspected burglar(s). (Exhibit 5) After a failed attempt to track the suspect, Officer Douglas and her K9 returned to Visocky's residence. (*Id*.) At this point, officers had removed the safe from the apartment and the common hallway and asked Officer Douglas to have the K9 sniff the safe and the apartment.[3] (Exhibit 5 at 2) The K9 did not alert on the safe. (*Id*.)

Mr. Visocky, the leaseholder and sole tenant occupying the apartment where the burglary had occurred, was working at The Annex at the time of the attempted burglary and the subsequent sweep of his residence. (Exhibit 1 at ¶¶ 1, 16-18)

---

[3] With the help of the K9, officers identified a small amount of marijuana and paraphernalia in a small silver purse on the floor of the apartment. Amundson subsequently admitted to law enforcement that the drugs and paraphernalia found in the purse belonged to him. (Exhibit 1 at ¶ 21) (Exhibit 5 at 2)

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

Officer Dexter made several failed attempts to contact Mr. Visocky at The Annex to have him return to the residence. (Exhibit 6 at 3)  When Officer Dexter made a final attempt to persuade Mr. Visockey to leave work and return home, a man identifying himself as Visocky's attorney told the officer, "[y]ou guys apparently scared the crap out of Jeremy and he doesn't want to talk right now." (Exhibit 6 at 3) It was at this point that Officer Dexter determined that he and his fellow officers "should begin taking things for safekeeping" from Mr. Visocky's residence. (*Id.*)

Officers seized evidence of criminal activity – namely drug and weapon possession – from Mr. Visocky's residence under the guise that they were temporarily holding onto the items for safekeeping because the house could not be secured. There is nothing in the police reports to indicate that they secured any of Visocky's other possessions for "safekeeping." (Exhibit 6 at 3)  In addition to collecting the ammunition (clips and magazines), paraphernalia and weights to take with them to the police station, officers also took possession of the safe they had noticed upon entering the residence. (Exhibit 1 at ¶ 19)  By the time officers left Mr. Viscocky's residence early in the morning on July 25, 2010, their investigation had morphed from a burglary investigation to an investigation into drug and weapon possession by the burglary victim.[4]

---

[4] Madison Police Department's investigation of the burglary has been halted. A suspect was never identified.

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

The safe seized by officers the night of the burglary would sit in the Madison Police Department evidence storage facility for one month before officers made any effort to obtain a warrant to examine its contents. (Exhibit 7) (Exhibit 8)

As a result of delay on the part of law enforcement in filing an application, a search warrant was not issued until August 24, 2010 -- the same day it was requested and exactly one month after the seizure of the safe. (Exhibit 1) (Exhibit 8) The warrant clearly laid out the procedures and strict time line to be followed by the officers when conducting a search and seizure, emphasizing the importance of expediency in investigations involving searches and seizures. (Exhibit 8)

On August 27, 2010, officers searched the safe. (Exhibit 8) The search of the safe revealed a firearm, ammunition, and what police suspected to be marijuana. (*Id.*) In addition, the safe contained several items unrelated to law enforcement's investigation but likely to be of importance to Mr. Visocky, including the title to his vehicle, a box of personal checks, car keys, including a fob and an extra key to his vehicle, and a key to his residence. (*Id.*) Mr. Visocky was deprived of his right to possess the safe and these important items for one month when, ultimately, it should have taken law enforcement only a few days to obtain the warrant to search the safe.

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

**B.    Mr. Visocky had a legitimate possessory interest in the safe seized from his residence and its contents.**

The Fourth Amendment provides that the "'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated. "' *Pepper v. Village of Oak Park*, 430 F.3d 805, 808 (7th Cir. 2005), *quoting* U.S. CONST. AMEND. IV. The safe seized by police on July 24, 2010 from Mr. Visocky's residence qualifies as a personal "effect" subject to protection under the Fourth Amendment.[5] *See Pepper,* 430 F.3d at 809 (finding that the plaintiff's couch and television set were personal "effects" protected by the Fourth Amendment); *United States v. Place,* 462 U.S. 696 (1983) (concluding that personal luggage was an "effect" within the meaning of the Fourth Amendment).

Under the Fourth Amendment, a "seizure" of property or effects "connotes 'some meaningful interference with an individual's possessory interests in that property.'" *United States v. Ward,* 144 F.3d 1024, 1032 (7th Cir. 1998), *quoting United States v. Jacobsen,* 466 U.S. 109, 113 (1984). The police removed the safe from Mr. Visocky's residence, storing it in the Madison Police Department evidence facility for an extended period of time. There is no indication that Mr. Visocky was free to retrieve his safe from the police at any point.  Depriving Mr. Visocky of access to the

---

[5] Officers on scene attributed possession of the safe to Mr. Visocky. The police deduced that the burglars had dragged the safe from Mr. Visocky's residence into the common area of the apartment.  In her report, Officer Douglas said the following regarding the safe: "the locker that was removed from the apartment and in the common hallway… K9 Martie alerted to the back closet from which it appeared the safe was removed from." (Exhibit 5 at 2)

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

safe and its contents for over one month constitutes a meaningful interference in his right to possess the safe.

In *United States v. James,* the Seventh Circuit specified that in the type of case at hand, where a safe is seized and then a warrant is obtained for a search of the safe, the Fourth Amendment protects two separate interests: (1) the defendant's privacy interest in the contents of the safe; and (2) his right to possess the safe. 571 F.3d 707, 713 (7th Cir. 2009), *citing United States v. Ward*, 144 F.3d 1024, 1031 (7th Cir.1998). In *James,* the Seventh Circuit found that the defendant's privacy interest in the safe was not at issue because officers eventually obtained a warrant to search the safe. *Id.* The same would be true with regard to the safe seized by police from Mr. Visocky's residence; although the warrant was obtained after the seizure of the safe, a Fourth Amendment challenge relating to Mr. Visocky's privacy interest in the safe and its contents is unlikely to prevail. However, the police did interfere with Mr. Visocky's possessory interest in the safe and they continued to interfere without a warrant, for an exceedingly long period of time.

**C.    Law enforcement's prolonged interference with Mr. Visocky's possessory interest in the safe was unreasonable under the circumstances and, therefore, in violation of the Fourth Amendment.**

Even assuming, *arguendo*, there was probable cause to believe Mr. Viscoky's safe was associated with criminal activity and immediate seizure of the safe was justified to prevent the destruction of evidence, it was unreasonable for the police

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

to maintain possession of the safe for one month before eventually applying for and obtaining a search warrant. The Supreme Court has approved warrantless seizures of property, based on probable cause, "for the time necessary to secure a warrant, where a warrantless search was either held to be or likely would have been held impermissible." *Segura v. United States,* 468 U.S. 796, 806 (1984), *citing Chambers v. Maroney,* 399 U.S. 42 (1970); *United States v. Chadwick,* 433 U.S. 1 (1977); *Arkansas v. Sanders,* 442 U.S. 753 (1979).

> In *Segura v. United States,* 468 U.S. 796 (1984), the Supreme Court stated:
>
> Securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents.

*Id.* at 810. Under *Segura,* a *temporary* warrantless seizure is permitted to allow for officers to obtain a warrant to continue investigating. *Id.* at 816 (it was reasonable to occupy defendant's residence *for 19 hours* while police obtained a search warrant) (emphasis added); *see also Illinois v. McArthur*, 531 U.S. 326, 331-33 (2001) (where police had probable cause to believe the suspect had marijuana in his trailer home and would destroy it if they let him enter unmonitored, it was constitutionally reasonable for police to forbid him to enter his own residence without a police escort *for two hours* while they obtained a search warrant) (emphasis added); *see also Minnesota v. Olson*, 495 U.S. 91, 100-01 (1990) (warrantless intrusion may be justified by imminent destruction of evidence). Under *Segura,* the initial seizure of the safe

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

from Mr. Viscoky's residence may have been justifiable based on "pressing or urgent law enforcement need." However, in Mr. Visocky's case, law enforcement made no effort to promptly obtain a search warrant. As such, the warrantless seizure of the safe cannot be justified on the ground that there was "pressing or urgent law enforcement need" to preserve evidence while obtaining a warrant.

Although reasonable at its inception, a seizure may become unreasonable "as a result of its duration or for other reasons." *Segura,* 468 U.S. at 812. In order to comply with the Fourth Amendment, police officers are required to make reasonable efforts to reconcile law enforcement needs with the demands of personal privacy, which includes limiting the length of the intrusion. *McArthur,* 531 U.S. at 332. Whether reasonable efforts were made depends on the circumstances. *Id.*

A balancing test must take place to determine whether the prolonged seizure of Mr. Visocky's property was "unreasonable" and thus, unconstitutional under the Fourth Amendment. Ultimately, the police interfered with Mr. Visocky's possessory interest in the safe for an unreasonable amount of time and their delay in obtaining a search warrant for the safe was purposeless.  Rather than drafting a warrant application for search of the safe immediately, law enforcement waited approximately one month before submitting an application to this Court. Mr. Visocky thus, was deprived of his possessory right to the safe and its contents for an extended period of time when obtaining a warrant would have taken very little

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

time at all. When officers finally applied for a search warrant on August 24, 2010, a warrant was issued the same day. Law enforcement exploited possession of Mr. Visocky's safe, holding onto it much longer than necessary and making no effort to secure a search warrant sooner. This was constitutionally unreasonable.

In *United States v. Mitchell,* for instance, the Eleventh Circuit found that a 21-day delay in obtaining a search warrant to search a computer hard drive for child pornography was unreasonable under the circumstances. 565 F.3d 1347 (11th Cir. 2009). The Eleventh Circuit reasoned that the defendant had a substantial possessory interest in the computer and the police had no compelling justification for holding onto it as long as they did before securing a warrant. *Id.* at 1352-1353; *see also United States v. Dass,* 849 F.2d 414, 415-416 (9th Cir. 1988) (affirming district court's order suppressing drugs found in packages that had been detained by agents for 7-23 days before agents secured a warrant); *United States v. Repress,* 9 F.3d 483, 488 (6th Cir. 1993) (duration of seizure pending issuance of search warrant must be reasonable; court found a 10-hour seizure reasonable given the time of day and time it would take to prepare an affidavit, submit the affidavit to a magistrate and have it approved).

The exclusionary rule precludes the use of evidence obtained in violation of the Fourth Amendment. *Brown v. Illinois,* 422 U.S. 590, 598 (1975); *Segura,* 468 U.S. at 804.  It deters lawless conduct by law enforcement officers by " closing the doors

10

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

of the federal courts to any use of evidence unconstitutionally obtained. " *Brown v. Illinois*, 422 U.S. 590, 598 (1975); *Wong Sun v. United States*, 371 U.S. 471, 486 (1963). The safe and its contents must be excluded from evidence because the prolonged seizure of the safe violated the Fourth Amendment's prohibition against unreasonable searches and seizures. Law enforcement officers identified no reason why prolonged possession of the safe was necessary. Such clear and reckless disregard for a suspect's Fourth Amendment interests must be deterred.

Dated at Madison, Wisconsin December 6, 2010.

Respectfully submitted,
JEREMEY VISOCKY, *Defendant*

*/s/ Michael W. Lieberman*
Michael W. Lieberman, Bar # 1059034

FEDERAL DEFENDER SERVICES
 OF WISCONSIN, INC.
222 West Washington Avenue, Suite 680
Madison, WI 53703
Tel: 608-260-9900
Fax: 608-260-9901
michael_lieberman@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing to be served via the Court's CM/ECF system to Assistant United States Attorney Rita Rumbelow, this 6th day of December, 2010.

*/s/ Michael W. Lieberman*
Michael W. Lieberman

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.