## MADISON POLICE DEPARTMENT

| | | | |
|---|---|---|---|
| Date of Report: | 8/7/2010 | Case No: | 2010-207736 Field Supplement |
| | | Ref. No: | |
| Occurred Incident: | 10 - Residential Burglary | Sec/Area: | 304 SOUTH |
| Dispatched as: | 10 - Residential Burglary | Grid: | GREENBUSH |
| Case Offense: | WEAPONS OFFENSE | | |
| Addr of Occurrence: | 1042 Erin St | | |
| Call Date/Time: | 07/23/2010 23:04 | From Date/Time: | |
| Dispatch Date/Time: | 07/23/2010 23:05 | Thru Date/Time: | |
| Reporting Officer: | PO DAVID J MERTZ 4396 | | |
| Special Routing: | | | |

**VICTIM**  JASON J AMUNDSON
M/W  DOB: 07/10/80 (30 yrs) Height: 6'00" Weight: 180
HairColor: BRO  EyeColor: BLU
1042 ERIN ST 1  MADISON WI  H: 651-269-8063  C: 715-699-2373

**VICTIM**  MICHELLE E CASTRONOVO
F/W  DOB: 06/08/88 (22 yrs) Height: 5'03" Weight: 126
HairColor: BRO  EyeColor: BLU
1131 BOWEN CT  MADISON WI  H: 815-547-4087  C: 815-988-2118
DRV LIC:  C236-5458-8763 IL

### NARRATIVE:

On 07-23-10, at approx. 11:05pm, I was dispatched to 1042 Erin St. in the city of Madison reference a weapons offense. I was working as 5C22, dressed in full-military style uniform, and operating marked squad S406. The call notes indicated the complainant was being held at gun-point by a big black man inside the house. PO Dexter, PO Boespflug, and Sgt. Wiering responded to the scene as well. Upon arrival, PO Dexter ordered two subjects out of the residence. After securing the scene, I questioned the victims.

### Jason J. Amundson's Statement

I made contact with the victim, Jason J. Amundson. I verbally identified him. I asked Amundson what had occurred this evening. Amundson stated he left Annex Bar which is located at 1206 Regent St with Michelle E. Castronovo. Amundson is employed at Annex Bar. Amundson and Castronovo drove together to 1042 Erin St. When Amundson parked his vehicle in the driveway, Amundson stated he observed a male subject, wearing black clothing walking through the backyard. Amundson stated he assumed the male subject was a neighbor or a college student. Amundson and Castronovo proceeded to the front door of the residence.

Amundson then observed the front door was damaged. Amundson stated half of the door was intact. Amundson stated he looked inside the living room and observed that the TV, computer, and Playstation were still there. Amundson and Castronovo decided to enter the residence. It should be noted the front door opens into the kitchen. Amundson stated immediately after turning the kitchen light on, he observed the suspect enter the residence through the front door. Amundson stated the suspect pointed and pressed a handgun against his left torso area. Amundson stated the suspect asked Amundson, "What are you doing here." Amundson stated he told the suspect, "I'm here to let the dog out." It should be noted Amundson and Castronovo came to the residence to take care of his friend's dog.

Exhibit 3   U.S. v. Jeremy Visocky   15

Case # 2010-207736, PO DAVID J MERTZ 4396               Page 2 of 2

Amundson stated the suspect then pointed and pressed the handgun on Castronovo's back. Castronovo was standing next to Amundson in the kitchen. Amundson stated then the suspect said, "Get in the living room and sit down." Amundson stated the suspect also said, "Don't look at me." At this point, Amundson stated the suspect escorted him and Castronovo to the living room where they sat on the floor. Amundson stated the kitchen is approximately 10 feet from the living room. Amundson stated the suspect left the living room and began pacing around the residence. Amundson stated the suspect left the residence via the front door. Amundson stated he heard the suspect say, "Hurry up, let's go." Amundson and Castronovo never saw a second suspect but, assumed the suspect was speaking to an accomplice.

Amundson stated he did not give any person consent to point and press a handgun at him. Amundson stated he was very scared of the suspect's actions.

I asked Amundson to describe the handgun. Amundson stated the handgun was possibly a revolver, with an extended barrel, and black in color. Amundson stated he could have mistaken the barrel for a silencer.

I asked Amundson to describe the suspect. Amundson stated the suspect was a M/B, approx. 20-25 years of age, approx. 601, and approx. 170 pounds. Amundson stated the suspect wore black pants, black t-shirt, a black ski-mask which covered his face, and a black stocking cap. Amundson did not observe the suspect's shoes.

### Michelle E. Castronovo's Statement

I then made contact with Michelle E. Castronovo. I verbally identified her. Castronovo stated when she entered the residence with Amundson, the suspect eventually pressed the handgun against her mid-back and escorted her to the living room. When Castronovo sat on the floor, she grabbed her cell phone from her pocket and called 911. Castronovo stated the suspect saw that and demanded the cell phone from her. Castronovo stated the suspect said, "Give me your phone," and then attempted to snatch the phone from her hand. Castronovo stated, "You can't take my phone." Castronovo stated the suspect then walked around the residence for a few seconds and left the area.

Castronovo stated she did not give any person consent to point and press a handgun at her. Castronovo stated she was disturbed and frightened by the suspect's actions.

Castronovo gave the same description of the handgun and suspect. Castronovo and Amundson stated the incident lasted approximately four minutes.

NFA

PO D. Mertz, 4396

jmc