U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

Report of In..._tigation

| Title of Investigation: | Investigation Number: | Report Number: |
|---|---|---|
| VISOCKY, Jeremy | 778070-10-0101 | 2 |

## SUMMARY OF EVENT:

On August 12, 2010, Special Agent William Baudhuin and Detective Mary Copeland of the Madison Police Department interviewed Jason Amundson regarding a burglary that took place at a residence in Madison, WI.

## NARRATIVE:

1. On August 12, 2010, Special Agent William Baudhuin and Detective Mary Copeland of the Madison Police Department interviewed Jason J. Amundson, M/W, DOB: 7/10/1980, regarding an attempted burglary that took place at 1042 Erin Street, Madison, WI. Amundson's telephone numbers are the following: (H) 651 269-8063; (C) 715 699-2373.

2. Amundson stated that he works at the The Annex bar and also at the Regent Street Retreat. He said that his hours are typically 7 pm to 3 am. He said that he also works out of town on odd jobs. He indicated that he regularly checks Craigslist for work. Amundson said that he is originally from the Hayward, WI area, so he works as far north as Eau Claire, WI.

3. According to Amundson, he is not a permanent resident of 1042 Erin Street. He said that he uses it as a place to stay once in a while, and he also uses it as a mailing address. He said that does not keep any of his belongings in the apartment, but added that he stores some items in the basement area. Amundson said that he is currently in the process of getting an apartment on South Street in Madison. He also said that Jeremy VISOCKY, the person in whose name the apartment is rented, is also originally from Hayward. Abramson has known VISOCKY since he was sixteen years of age.

4. Amundson said that on the day of the incident, he got off of work early and that he and his friend Michelle Castronovo came to the residence to let VISOCKY'S dog out. Amundson said that he got off of work at 11:00 pm and was at the house by 11:30 pm. He said that VISOCKY owns a Jack Russell Terrier.

5. Amundson said that they pulled into the alley on the east side of the house. He noted that he observed somebody walking through the alley, but he did not think much of it due to the fact that there are always people walking in the area.

| Prepared by:<br>William S. Baudhuin | Title:<br>Special Agent, Madison Field Office | Signature: | Date: |
|---|---|---|---|
| Authorized by:<br>Diane L. Pospyhalla | Title:<br>Resident Agent in Charge, Madison Field Office | Signature: | Date:<br>08/27/10 |
| Second level reviewer (optional):<br>Bernard J. Zapor | Title:<br>Special Agent in Charge, St. Paul Field Division | Signature: | Date:<br>08/27/10 |

Page 1 of 2

ATF EF 3120.2 (10-2004)
For Official Use Only

EXHIBIT 3
U.S. v. Jeremy Visocky    17

Exhibit 4

| Title of Investigation: VISOCKY, Jeremy | Investigation Number: 7780...-0101 | Report Number: 2 |
|---|---|---|

6. Amundson said that he and Michelle Castronovo entered the house through the east side door, and upon entering were met by an individual armed with a revolver. He said that this individual's face was covered with a snowmobile type of mask that with Velcro straps that attached behind his head. Amundson said that the revolver was black in color with an extended barrel and possibly a silencer attached to it. Amundson estimated that based on his experience with firearms, the handgun was a .357 caliber.

7. Amundson said that the gunman had him turn around and put the gun in the back of Castronovo. The gunman told Amundson and Castronovo to get into the living room and sit down.

8. Amundson said that the gunman then continued to look around the house. Amundson said that while the gunman was walking around the house, Castronovo, called 911 to report that they were being held at gunpoint. Amundson described that she would pick the phone up and talk while the gunman was not looking at them. Amundson said that it appeared the gunman appeared to be looking for things to take in the apartment.

9. Amundson said that when the gunman realized that Castronovo had been talking on the phone, he told her to give him the phone. Amundson added that when the gunman realized that she had been on the phone he exited the apartment. Amundson estimated that approximately ninety seconds later officers responded to the residence.

10. Amundson said that he did not know what the gunman was looking for. Amundson said that although he suspected there was a second person with the gunman, he did not hear the gunman talk to the second person while he was in the apartment. Amundson said that he heard the gunman possibly say something like, "Let's get the fuck out of here," to a second person as the gunman was exiting the residence.

11. Amundson said that that he was not sure what the gunman took from the home. Amundson said that he was not sure what the gunman was looking for, but he thought that he was possibly looking for electronics. Amundson noted that a flat screen television inside the apartment can be seen through the back window. He said that the gunman may have taken some sound gear, but he was not sure.

12. Amundson also stated that in the time between the gunman leaving the residence and the police arriving he put a computer monitor back in place which had been moved.

13. Upon being asked if he had spoken with VISOCKY about the incident, Amundson said that he had not. He said that the he did not feel like it was his business.

14. Amundson said that Castronovo does not live at VISOCKY'S apartment.

15. Amundson said that any drug and paraphernalia found in Castronovo's purse belonged to him. He stated that he has previously been arrested for possession of THC. He said that he completed a drug program in relation to his sentence in this case, and the charge was reduced to a misdemeanor. Amundson said that he buys marijuana up north around Hayward because he does not know anybody who sells around here.