## MADISON POLICE DEPARTMENT

| | | | |
|---|---|---|---|
| Date of Report: | 7/24/2010 Bvesley | Case No: | 2010-207736 Field |
| | | Ref. No: | |
| Occurred Incident: | 7 - Weapons Offense | Sec/Area: | 304 SOUTH |
| Dispatched as: | 7 - Weapons Offense | Grid: | GREENBUSH |

Case Offense:       WEAPONS OFFENSE
Addr of Occurrence: 1042 Erin St 1
Call Date/Time:     07/23/2010 23:04  J Ferdley           From Date/Time:
Dispatch Date/Time: 07/23/2010 23:05                      Thru Date/Time:
Reporting Officer:  PO JAMES M DEXTER 3998
Special Routing:    CAPT BALLES, LT STOKLASA, BTF

---

**CONTACT**      **JEREMY J VISOCKY**
                 M/W  DOB: 03/24/81 (29 yrs) Height: 5'11"  Weight: 300
                 HairColor: BRO  EyeColor: BLU
                 1042 ERIN ST  MADISON WI  H: 608-669-3316
DRV LIC:         V220-4308-1104-07 WI
HOW ID'D:        WI DL
                 Not Searched

**SUSPECT**      **2010-00207736 99UNKNOWN**
                 M/B (20 - 25 yrs) Height: 6'01"-6'02",  Weight: 170-180,
                 MADISON WI
OFFENSE #1:      DISORDERLY CONDUCT, S 947.01

**VICTIM**       **JASON J AMUNDSON**
                 M/W  DOB: 07/10/80 (30 yrs) Height: 6'00"  Weight: 180
                 HairColor: BRO  EyeColor: BLU
                 1042 ERIN ST 1  MADISON WI  H: 651-269-8063  C: 715-699-2373
HOW ID'D:        VERBALLY
                 Frisked

**VICTIM**       **MICHELLE E CASTRONOVO**
                 F/W  DOB: 06/08/88 (22 yrs) Height: 5'03"  Weight: 126
                 HairColor: BRO  EyeColor: BLU
                 1131 BOWEN CT  MADISON WI  H: 815-547-4087  C: 815-988-2118
DRV LIC:         C236-5458-8763 IL
HOW ID'D         VERBALLY
                 Not Searched

**PROPERTY INFO:**

| Code | Description | Value |
|---|---|---|
| SEIZED | MISCELLANEOUS DRUG PARAPHERNALIA | |
| | Tag No. 242969, found in open closet in residence at 1042 Erin Street | |
| SEIZED | MISCELLANEOUS DRUG PARAPHERNALIA | |
| | Tag No. 242973, found in Castronovo's purse | |

### OFFICER NARRATIVE

At 11:05pm dispatched activated the alert tones for the South Police District indicating an incident at 1042 Erin Street. Dispatch advised that a female caller whispered the address and stated that she was being held at gunpoint.

Exhibit 6     U.S. v. Jeremy Visocky     7

I responded from the South Police District and while en route, we were moved to Tactical Channel No. 5, and I requested the full information from the call. I was informed that the female subject stated that she was being held at gunpoint and that she had repeated the address multiple times and stated that she was at 1042 Erin Street on the first floor. I asked Dispatch to give us a good location of where exactly that was, and they advised that the house was on the northeast corner of Erin Street and Mills Street. I responded from the Park Street side and arrived at the same time as PO Boespflug. I exited my squad car with my department rifle and approached the residence, located on the north side of Erin Street.

I advised other officers to approach from the other direction and for an officer to come in on the north side of the residence on Mills Street. Upon approaching the residence, I observed that the front storm door was open. As PO Boespflug and I were taking positions, I requested a K-9 and at this time a male white subject, later identified as Jason Amundson, began to exit from the side door located on the east side of the house adjacent to the driveway. I raised my rifle and activated the tactical illuminator and advised Amundson to put his hands up. Amundson complied and stated that he was one of the people who had called. I ordered Amundson down the stairs and back towards us, at which point PO Boespflug conducted a pat down of Amundson.

I asked Amundson what was going on, and he stated that he and the female still inside, later identified as Michelle Castronovo, had just come home to let the dog out and that there was a male black subject inside of the residence and that he had had a handgun. Amundson described the subject as approximately 6'01", between 170 and 180 pounds, wearing some sort of ski mask. Amundson stated that he saw a firearm in the subject's hand and thought it might possibly have a silencer inside of it.

At this time I saw Castronovo at the door and I advised her to go out the front door as Amundson had advised that the suspect had left out the east-side door and I wanted to preserve any possibility that there could be for a K-9 track. Castronovo exited the front and I advised her to go with Officer Mertz as I had told Amundson to go sit by my squad car, where he currently was.

K-9 handler Douglas arrived on scene with Martie, and it was determined that she would take an exterior position as Sergeant Wiering, PO Boespflug, and I cleared the apartment. Upon going up onto the front porch on the south side of the house and going up to the storm door, we immediately could see in the common area where the stairs go up to Apt No. 2 the door to Apt No. 1 and the door to the basement where there was a large green safe consistent with what I know in my experience to be a gun safe. It was obvious that this was a safe for long guns. I conducted a clear of the residence and found no one inside.

While inside of the residence, I observed that the east-side door had been severely damaged and that that was the point of entry. The door had sustained heavy damage and was broken into multiple pieces. Also in plain view in one of the open closets was a case containing multiple items of drug paraphernalia. I observed many glass pipes and one bowl, which I know through my training and experience as a police officer as well as my advanced training in narcotics, including a 16-hour course by the Madison Police Department as well as 40 hours of highway narcotic interdiction, were used to smoke illegal narcotics. I also observed two weights, which I also know from my training and experience to be consistent with the weighing of illegal narcotics. One of the weights was 100 grams and the other was 200 grams. Also out in the open was a green ammo case with the word "clips" on the side. Inside of this case was loose ammunition, including .45-caliber and seven .762 rounds. Also on the floor I observed a blue backpack that was open, and in plain view I could see what I know through my military experience to be clips for assault style rifles, such as an AK-47. I removed these from the bag and observed that they were loaded with .762mm rounds consistent with an AK-47.

Case # 2010-207736, PO JAMES M DEXTER 3998                          Page 3 of 3

While inside the residence, K-9 Martie did indicate the presence of narcotics in a silver purse lying on the floor. I searched the purse and discovered a red container filled with at least three glass smoking pipes, which I know through my training and experience to be used most commonly to smoke marijuana. I could observe residue inside as well as multiple pill containers that also contained marijuana residence. I also observed that in the bottom of the purse there were small pieces of marijuana, commonly referred to as "shake."

I packaged the paraphernalia from the purse and went back outside to speak with the witnesses. I spoke with PO Mertz, who stated that the residence actually belonged to Jeremy Visocky, who was currently working at The Annex. I spoke with Castronovo, who stated that she had spoken with Visocky, but he could not get out of work. I then requested that Data contact The Annex and tell them that Visocky needed to come back to his residence and it was a matter of public safety. Data later advised that he would see what he could do.

After some time, I had not seen or heard from Visocky, so I went to The Annex to speak with him. I saw Visocky up on the stage packing some gear and I asked him to step down and speak with me. I advised Visocky that we needed to speak with him back at his residence, and he stated that he would be headed back home. I asked Visocky how long it would take, and he said approximately 15 minutes. At this time I asked Visocky for his ID and advised him that I would give it back to him when I got all the information and met him at his house. Visocky stated again that he would be there in 15 minutes.

I arrived back on scene and Investigator Parr had arrived and begun to document the evidence. It should be noted that while clearing the residence, I was wearing gloves. While waiting at least 30 minutes, I again called The Annex and was told that Visocky was still there. I then returned to The Annex and began looking all over the place and was told that Visocky was in different places throughout the bar. I was finally told that he was in the parking lot on the east side of the building. I went outside and was met by a subject who identified himself as Visocky's attorney. The subject, who had a business card stating that he was Michael Schmidt, stated, "You guys apparently scared the crap out of Jeremy and he doesn't want to talk right now." I turned to leave and advised Investigator Parr that we should begin taking things for safekeeping as Visocky was not present and did not wish to speak with me at this time.

I returned to the residence on Erin Street and assisted in placing the safe that was in the common area in Investigator Parr's vehicle. We also took the loose ammunition from the residence for safekeeping as we had no way to secure the residence without keys and one of the doors was currently significantly damaged. I also collected the multiple pieces of drug paraphernalia that I had located in plain sight from inside of the residence, placing them in a large brown bag supplied by Investigator Parr.

We all then went to the First Street garage, where Investigator Parr placed into property the safe and other items collected, and I logged the bag of drug paraphernalia located inside the residence under Tag No. 242969 at the First Street bay. I then returned to the South Police District and tagged the drug paraphernalia I had located in Castronovo's purse in SPD Locker No. 20 under Tag No. 242973. OIC Sergeant Fuhremann was notified of the final outcome of the incident.

See PO Mertz' report for further details on witness statements. NFI/jas

PO J. Dexter 3998

U.S. v. Jeremy Visocky                          9