IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA ) ) ) v. ) Case No. 10-cr-152-wmc ) JEREMY VISOCKY, ) ) Defendant. ) ) | |

GOVERNMENT'S BRIEF IN OPPOSITION TO DEFENDANT VISOCKY'S
MOTION TO DISMISS AND MOTION TO SUPPRESS

Defendant Visocky, who is charged with violating 18 U.S.C. §922(g)(3), has filed a motion to dismiss the indictment on the ground that §922(g)(3) violates the Second Amendment. Visocky acknowledges that the Seventh Circuit recently upheld the constitutionality of §922(g)(3) in *United States v. Yancey*, 621 F.3d 681 (7th Cir. 2010). Because Visocky has filed the motion to dismiss solely to preserve the issue for further review, the government relies on *Yancey* and asks this Court to deny the motion to dismiss.

Visocky has also filed a motion to suppress evidence, claiming law enforcement's prolonged interference with his possessory interest in a safe was unreasonable under the circumstances, and, therefore violated the Fourth Amendment's proscription against unreasonable searches and seizures.

The facts presented by Visocky, as reflected in the reports he attached to his brief, are not in dispute.  The government has also attached a copy of MPD Investigator Thomas Parr's report, photos of the broken door at Visocky's residence, and a crime lab

submission form which reflects that swabs taken from the safe in the home invasion investigation were in fact taken to the crime lab, to this brief.[1]

    A.    <u>Discussion</u>

Visocky's road to suppression begins with him establishing that he had a reasonable expectation of privacy in the safe. *United States v. Yang*, 478 F.3d 832, 835 (7th Cir. 2007). A person cannot have a reasonable expectation of privacy in abandoned property. *United States v. Alexander*, 573 F.3d 465, 472 (7th Cir. 2009), citing *United States v. Pitts*, 322 F.3d 449, 455-56(7th Cir. 2003), unless the abandonment results from police misconduct, *United States v. McDonald*, 100 F.3d 1320, 1328 (7th Cir. 1996). "To demonstrate abandonment, the government must prove by a preponderance of the evidence that the defendant's voluntary words or actions would lead a reasonable person in the search officer's position to believe that the defendant relinquished his property interest in the items to be search." *Alexander*, 573 F.3d at 472, quoting *Pitts*, 322 F.3d at 456. The test is an objective one: this Court should consider only "the external manifestations of the defendant's intent as judged by a reasonable person possessing the same knowledge available to the " searching officer. *Id.*

Here, Madison Police Department (MPD) officers responded to a call of a home invasion at Visocky's residence at approximately 11:03 p.m. on July 23, 2010. Visocky's friend, Michelle Castronovo, told the officers that Visocky was working at the Annex. MPD placed a call to the Annex and said Visocky needed to return home, and that it

---

[1] These documents have all been provided in discovery.

was a matter of public safety. (Document #14-6, Dexter report, p. 3). When Visocky did not return home Officer Dexter went to the Annex to speak with him personally. (Id.). Visocky told Officer Dexter he would be home in about 15 minutes. (Id). Officers waited approximately 30 minutes for Visocky to return to his residence and then called the Annex again. (Id.). Officer Dexter was told that Visocky was still there in a parking lot. (Id.). Officer Dexter once again went to the Annex and this time was met by Michael Schmidt, who represented that he was Visocky's attorney. (Id.). Officer Dexter was told that Visocky did not want to talk to him. (Id.). Officer Dexter returned to Visocky's residence and he, along with Investigator Parr, began collecting items for safekeeping, because the door to Visocky's residence could not be secured. (Id., See also Parr report, p. 2). The officers also could not definitively identify who the safe belonged to because it had been found lying in the common hallway. (Parr report, p. 2).

    Clearly, the Madison Police Department officers did all they could do to get Visocky to return home and identify his personal property. By failing to return home to identify the safe as his, Visocky abandoned his property interest in the safe. Even after returning home and seeing that the safe was missing, there is nothing in the record to suggest Visocky had his attorney file a motion for return of property. Visocky's friends were at his residence to know the safe had not been successfully removed by the home invaders. Visocky's motion unconvincingly suggests the police had an obligation to contact him *again* in an effort to return his property.

    The undisputed facts prove there was no police misconduct here. First, the police had valid public safety concerns. As stated by the Fourth Circuit in *Mora v. City of*

*Gaithersburg, Maryland*, 519 F.3d 216, 227 (4th Cir. 2008), there are no shortage of precedents approving preventive seizures for the sake of public safety. *Citing Scott v. Harris*, 127 S. Ct. 1769 (2007)(permitting officers to protect bystanders by ramming into a fleeing driver's vehicle); *South Dakota v. Opperman*, 428 U.S. 364, 368-69 (1976)(permitting officers to protect drivers by towing vehicles that block roads); *Terry v. Ohio*, 392 U.S. 1 (1968)(permitting officers to protect potential victims of crime by seizing the potential criminal). In *Mora*, officers seized weapons and ammunition after Mora threatened suicide, and the Fourth Circuit held that the commanding officer's decision to remove the weapons, made in the face of a situation rife with the potential for tragic consequences both to the public and to Mora himself, is not one that judges "acting with due respect for the perspective of police officers on the scene and not with the greater leisure and hindsight and acquired wisdom of judicial hindsight" should overturn. (Citations omitted).

    In this case, Visocky's residence had just been violently broken into by an armed intruder. It would have been reckless for the officers to leave behind high capacity ammunition and the safe, which was the apparent object of the intrusion, in an unsecured residence at approximately 1:18 a.m.

    Further support for a finding that there was no police misconduct is the fact that the safe is also evidence of the separate and distinct home invasion offense, which the police are still investigating. In the absence of police misconduct, the government has proven by a preponderance of the evidence that Visocky abandoned any expectation of

privacy in the safe.

If the Court disagrees, the four-weeks from the seizure of the safe to the execution of the federal warrant was not constitutionally unreasonable where there is no bright line rule. The seizure of the safe is not analogous to the seizure of a computer authorities seized solely because they suspected it contained child pornography, yet then delayed in obtaining a search warrant. As already stated, the safe was also seized for public safety reasons and evidentiary purposes, and was not the subject of a motion for return of property.

For the foregoing reasons, the government respectfully requests that Visocky's motions to dismiss and suppress evidence be denied.

Dated this __16th__ day of December 2010.

                                                  Respectfully submitted,

                                                  JOHN W. VAUDREUIL
                                                  United States Attorney

By:          /s/
                _____

                RITA M. RUMBELOW
                Assistant United States Attorney