## MADISON POLICE DEPARTMENT

| | | | | |
|---|---|---|---|---|
| **Date of Report:** | 7/24/2010 | | **Case No:** | 2010-207736 Supplement |
| | | | **Ref. No:** | |
| **Occurred Incident:** | 7 - Weapons Offense | | **Sec/Area:** | 304 SOUTH |
| **Dispatched as:** | 7 - Weapons Offense | | **Grid:** | GREENBUSH |

**Case Offense:** HOME INVASION / ATTEMPTED ARMED ROBBERY
**Addr of Occurrence:** 1042 Erin St
**Call Date/Time:** 07/23/2010 23:04          **From Date/Time:**
**Dispatch Date/Time:** 07/23/2010 23:05       **Thru Date/Time:**
**Reporting Officer:** INV THOMAS J PARR 2871
**Special Routing:**

### PROPERTY INFO:

| Status Code | Tag # | Lkr # | Description |
|---|---|---|---|
| E | 242965 | 1st St Bay | 5' tall green "Stack-On" gun safe, unknown contents |
| E | 242966 | 29E | Yellow blankets used by suspects to carry safe |
| E | 242967 | 40E | Wet swab packages 1-8 from safe/potential suspect DNA |
| E | 242968 | 1st St Bay | Green military-style ammunition box; 3 high-powered rifle clips; assorted ammo |

### OFFICER NARRATIVE:

Shortly after 12:30 p.m. on Friday, July 23, I was requested at 1042 Erin St on the City's south side for a home invasion. I arrived on-scene and made contact with Officer Jim Dexter who was inside the first-floor apartment. Prior to entering the doorway to the apartment, I found a green locked gun safe in the foyer portion of the apartment complex in the common hallway. It was lying on its left side on top of a yellow blanket. Dexter indicated that entry was gained through a very old side door that enters into the kitchen from the deck area. There is a glass portion of this door with wooden frame. Apparently the suspect slammed on the glass hard enough to snap the door in two and enter the residence.

Officer Dexter indicated he found signs of marijuana use as there was a cabinet with a glass door in one of the closets in apartment 1. You could see clearly through the glass and there were several glass pipes, indicative of marijuana use in the house. There was also a backpack lying on the floor in apartment 1 which was zipped open at the time of my arrival. Inside were three high-powered rifle banana clip magazines, one of which had what appeared to be 7.62 ammunition inside the magazine itself.

I took overall photographs of apartment 1 to include the location of the safe in the common hallway. I also took photographs of the door. Due to the fact that the door is tremendously old and very rough-surfaced wood, I did not attempt to pull latent's off the door. There were no signs of biological or blood on the glass portions of the door. I also looked for footwear impressions on the very old kitchen linoleum. I did not find any at that time. It had not started raining prior to the incident, but throughout the course of my investigation on-scene it did start to rain.

I elected to right the safe and bring it out to the porch area so I could dust it for latent fingerprints. Due to the porous nature of the green metal, I was not seeing any areas of definition on the safe itself. I did swab all eight corners of the safe, beginning at 12:20 a.m. and ending at 12:28 a.m. on the 24th of July. I did swab the right rear top, right rear bottom, left rear top, left rear bottom, right front top, left front top, left front bottom, and right front bottom. Those swabs were taken by gloved hands and placed in double envelopes waiting air-drying.

I also collected the yellow blanket that was underneath the safe. It was explained by the victims inside that the suspects apparently tried to carry the safe by laying it on a blanket. The four corners of the blanket should have suspect DNA on them if taken to the Wisconsin State Crime Laboratory. I have no information if the suspects were wearing gloves at the time of the incident. I strongly suggest that blanket gets out to the Wisconsin State Crime Laboratory at earliest convenience for DNA testing on the corners of the blanket. The blanket was placed in an evidence bag and segregated from all evidence to avoid cross contamination.

Officer Dexter went to the renter's place of business, the Annex bar on Regent St. The resident was supposed to come back to his apartment. He failed to do so, so Dexter made a second trip to the Annex to make contact with the potential victim's lawyer. See his report for details.

Due to the fact that the house cannot be secured properly because of the kitchen door being smashed open and no way to be secured, we thought it in our best interests to secure a military-style ammo box found inside the residence with an assortment of 7.62 mm rounds. I know from practical experience, having 13 ½ years in the United States Army that high-caliber 7.62 rounds should not be left unsecured in a house that had just been broken into. The ammo box also had smaller caliber rounds. We elected to take the three banana clips that we found in the backpack and place them in the ammo can. We took that ammo can for safekeeping purposes.

Due to the fact that we could not positively identify the safe laying in the common hallway of this residence to be the potential victim's, we decided to take the safe for safekeeping. When I did right the safe with the help of Officer Boespflug, I did hear items jingling around inside. The safe is rather heavy, and we placed it in the back of my Forensic Services truck. This was for safekeeping purposes due to the fact that we were not going to leave the safe inside an unsecurable house with the victim not at home. That safe was taken at 1:15 a.m.; the ammo box was collected at approximately 1:18 a.m.

I drove the safe to the First St Bay property room area. I affixed the above-mentioned property code on the safe and sealed it with thumbprint and evidence tape, I also sealed the ammo box in the same manner.

I then brought my eight swab packages and the yellow blanket to the East Police District. I did seal the yellow blanket inside its original evidence packaging with thumbprint and evidence tape. It was placed in locker 29 at East Police District at approximately 3:25 a.m. on the 24th of July.

I then re-gloved and sealed all eight swab packages from the safe inside the double envelopes with thumbprint and evidence tape. All eight packages were then placed in a larger evidence bag sealed in the same manner. I do believe we may have suspect DNA on some of these swabs from the safe, as individuals who may have been ungloved had to have touched the corners of the safe to try to get it on the blanket. I would request taking the swabs to the Wisconsin State Crime Laboratory at your earliest convenience. Those swabs were placed in locker 40 at East Police District at 3:50 a.m. on 7/24.

One other thing to note: the safe and ammo box left at the First St evidence bay was secured at that bay at 1:47 a.m. on July 24th.     NFA/cmb

Supervisory Officer: _____ ID: _____

Reporting Officer:     _____ ID:     2871
                              INV THOMAS J PARR