UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

    *Plaintiff,*

  v.                                                   Case No.  10-cr-152-wmc

JEREMY VISOCKY,

    *Defendant.*

---

### DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO SUPPRESS

All evidence obtained by the government as a result of the illegal search and seizure of a safe belonging to Mr. Visocky must be suppressed. The government has failed to make persuasive arguments to the contrary. "The ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2008), *quoting Flippo v. West Virginia,* 528 U.S. 11, 13 (1999) (per curiam); *Katz v. United States,* 389 U.S. 347, 357 (1967). Because it was unreasonable for law enforcement to maintain possession of Mr. Visocky's safe for approximately one month before making any effort to obtain a search warrant, the evidence must be suppressed.

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

I.      Mr. Visocky Did Not Abandon the Safe

Contrary to the government's assertion (Gov't. Resp. at 2), Mr. Visocky did not abandon the safe. Rather, the police removed the safe from Mr. Visocky's residence without his permission or knowledge while he was at work. It is undisputed that Mr. Visocky was working at the time of the burglary and during the subsequent investigation. Officer Dexter went to his place of employment and was able to observe him working. (Def. Motion, Ex. 6 at 3) The fact that Mr. Visocky did not leave work and return home as the police wanted him to does not mean he abandoned his residence and its contents.

Abandonment results when "the defendant's voluntary words or actions would lead a reasonable person in the search officer's position to believe that the defendant relinquished his property interest in the items to be searched." *United States v. Alexander,* 573 F.3d 465, 472 (7th Cir. 2009), *quoting United States v. Pitts,* 322 F.3d 449, 455-56 (7th Cir. 2003). According to the Seventh Circuit, the court must "look at the totality of the circumstances, but pay particular attention to explicit denials of ownership and to any physical relinquishment of the property." *United States v. Basinski,* 226 F.3d 829, 837 (7th Cir. 2000), *citing United States v. Chandler,* 197 F.3d 1198, 1200 (8th Cir. 1999); *United States v. Liu*, 180 F.3d 957, 960 (8th Cir. 1999); *United States v. Ramos*, 12 F.3d 1019, 1025 (11th Cir. 1994). The facts of *Alexander*

provide a good example of when abandonment occurs. In that case, the defendant began explicitly denying his interest in the vehicle at issue even before the officers began to search it. *Alexander,* 573 F.3d at 472. Mr. Visocky, in contrast, did not in any way imply to officers that he was abandoning the safe.

In *Basinski,* the Seventh Circuit found that the defendant did not abandon a briefcase where he entrusted the locked briefcase to a life-long friend. *Basinski,* 226 F.3d at 837-48. The defendant entrusted the briefcase to his friend so it could be hidden on the friend's remote private property. The defendant later asked his friend to destroy the briefcase. *Id.* at 838-39. The Seventh Circuit ruled that no reasonable officer could have believed that the defendant, or his friend, abandoned the briefcase at any point in time. *Id.*

In *Basinski,* the Seventh Circuit identified three general situations where abandonment occurs. 226 F.3d at 837. In the first type of case, a defendant is fleeing and discards an object. *Id., citing California v. Hodari D.*, 499 U.S. 621, 624 (1991). The second type of case relates to garbage. Generally, the defendant discards material in or near a trash receptacle leading a reasonable person to conclude that the defendant has no interest in the item(s) discarded. 226 F.3d at 837, *citing California v. Greenwood,* 486 U.S. 35, 40-41 (1988). Finally, the third type of case involves a defendant who is caught with or near contraband and denies possession of it. 226

FEDERAL DEFENDER SERVICES OF WISCONSIN, INC.

F.3d at 837, *citing United States v. McDonald*, 100 F.3d 1320, 1327 (7th Cir. 1996). The defendant is explicitly disclaiming a possessory interest and the denial should be taken at face value. *Id.* According to the Seventh Circuit, the fact that the *Basinski* case did not fall into any of the aforementioned categories "strongly suggest[ed] that no abandonment occurred." 226 F.3d at 837. As in *Basinksi,* Mr. Visocky's actions on the night in question in no way fall into any of these categories.

Throwing, dropping or purposefully leaving an object when pursued by police has been deemed abandonment. *See, e.g., United States v. Edwards*, 441 F.2d 749 (5th Cir. 1971) (defendant fled the car, which came to rest partially on the pavement, on foot after wrecking it during a high-speed chase); *United States v. Williams*, 569 F.2d 823 (5th Cir. 1978) (defendant unhitched a semi-trailer loaded with marijuana, leaving it parked at a rest station, after apparently becoming aware of police surveillance); *United States v. Wilson*, 472 F.2d 901 (9th Cir.), *cert. denied*, 414 U.S. 868 (1973) (defendant was a weekly tenant in an apartment; the landlord found the door open and the apartment in disarray, and neighbors said defendant had moved out).

Similar to the Seventh Circuit in *Basinski*, the Tenth Circuit has said the following with regard to abandonment: "every case in which we have found abandonment involved a situation where the defendant either (1) explicitly disclaimed an interest in the object, or (2) unambiguously engaged in physical

conduct that constituted abandonment."*United States v. Garzon,* 119 F.3d 1446 (10th Cir. 1997), *citing United States v. Austin,* 66 F.3d 1115 (10th Cir. 1995) (the defendant entrusted his luggage to a total stranger at the airport. The stranger, concerned that it might contain a bomb, turned it over to airport security); *United States v. Jones,* 707 F.2d 1169 (10th Cir. 1983) (the defendant threw away a knapsack while being chased by the police). In *Garzon,* the Tenth Circuit found that a passenger on a bus did not abandon his backpacks when he left them on the bus during a brief stop. 119 F.3d at 1149-1150. The government argued that law enforcement had ordered Garzon and the other passengers to disembark the bus with all personal belongings and because Garzon failed to comply with this order he, in essence, abandoned his backpacks on the bus. *Id.* The Tenth Circuit found this argument unpersuasive and ultimately determined that Garzon did not objectively abandon his possessions on the bus. *Id.* Likewise, in *United States v. Eden,* the Sixth Circuit rejected the government's contention that property was abandoned after a police officer gave defendant "two opportunities to retrieve her personal belonging from a rental car" after being informed it would be towed. 190 Fed.Appx. 416, 424-25 (6th Cir. 2006).

Mr. Visocky believed his safe to be secure in his residence while he was at work. He never gave officers consent to seize his property, nor did he deny possession of it. Furthermore, he had no reason to believe that officers would be

seizing the safe from his property while he was working. As such, Mr. Visocky did not abandon his interest in the safe.

## II.   The Government Has Provided Nothing but Self-serving Justifications for the Unreasonable Length of the Seizure of Mr. Visocky's Safe That Are Quickly Refuted by the Evidence

It is clear that once police entered Mr. Visocky's residence, their investigation of the burglary quickly turned into an investigation of the burglary victim, Mr. Visocky. Police seized evidence but it was not to further their burglary investigation. Police cannot use their investigation of the "separate and distinct home invasion offense" (Gov't Br. at 4) to justify their prolonged interference with Mr. Visocky's interest in the safe.

The government's assertion that police had valid public safety concerns justifying prolonged seizure of the safe is belied by the facts. Officers claim they seized the safe and contraband from Mr. Visocky's residence for "safekeeping," but they failed to secure any other valuables that might have been in the residence. For instance, there is nothing to indicate that police secured any expensive electronic equipment like a television or a stereo – common quarry for burglars. The government's claimed motive for taking the safe simply does not ring true.

The government also argues that the conduct of the police was not unreasonable because "the safe is also evidence of the separate and distinct home

invasion . . ." (Gov't Br. at 4) While that may be true, the record demonstrates that that had nothing to do with why they took the safe. According to the police reports, evidence related to the home invasion was taken from the safe prior to the officers' departure from the scene. As detailed in the report of Investigator Parr, which was attached to the government's response, officers dusted the safe for latent fingerprints before leaving Mr. Visocky's residence. (Doc. 19-1 at 1) Investigator Parr was "not seeing any areas of definition on the safe itself." (*Id.*) The officer swabbed the exterior of the safe for DNA and placed the swabs into evidence. (*Id.*) There is no evidence that any further testing performed on the safe, including the search of the safe, was related to the home invasion. All testing related to the burglary was performed on scene, discrediting the government's assertion that the safe was seized in order to perform additional investigatory tests.

The available evidence clearly demonstrates, notwithstanding the government's claims to the contrary, that police seized the safe solely to investigate Mr. Visocky.

### III. The Fourth Amendment Was Violated When Law Enforcement Officers Maintained Possession of the Safe for an Unreasonable Amount of Time Without Securing a Warrant

The police seized and held onto the safe for an unreasonable amount of time, making no effort to secure a warrant for approximately a month. In doing so, the

police acted unreasonably. Assuming for the sake of argument that officers had a legitimate safety concern and this safety concern could be used to justify the initial seizure, it is unreasonable to think that the safety concern could not have been resolved without such a long delay. There exists no legitimate excuse for the delay on the part of the police -- the government has not even attempted to provide one. Rather, as in *United States v. Mitchell,* this was a case of the officers feeling as though there was "no rush." 565 F.3d 1347, 1353 (11th Cir. 2009). This is the type of inexcusable behavior that the exclusionary rule is designed to deter.

The government boldly asserts that the seizure of the safe is not analogous to the seizure of the computer (hard drive) found to be unreasonable in *United States v. Mitchell,* 565 F.3d 1347 (11th Cir. 2009). (Gov't Br. at 5) However, the government makes no effort to substantiate this argument. Like a computer, a safe is used, by definition, as a receptacle for irreplaceable and personal effects; Merriam-Webster defines a safe as "a place or receptacle to keep articles (as valuables) safe." The thrust of Mr. Visocky's argument is that, even if the immediate seizure of the safe for public safety or evidentiary purposes, as asserted by the government, was legitimate, the prolonged interference with Mr. Visocky's interest was unreasonable. There need not be a bright-line test for reasonableness in order for this Court to determine that the officer's conduct was unreasonable in the instant case. *See*

*Schneckloth v. Bustamonte,* 412 U.S. 218, 227 (1973) (the Supreme Court eschewed the use of bright-line rules in the Fourth Amendment context, holding instead that the totality of the circumstances test was the best test to employ because it gave law enforcement the latitude it needed to deal with real life in the field of criminal investigation). Thus, the government's claim that police conduct cannot be unreasonable unless it violates some bright line rule (Gov't Br. at 5) lacks merit.

Mr. Visocky's Fourth Amendment rights were violated as a result of the officers' laziness and unreasonable delay in obtaining a warrant. The Court should, therefore, grant his motion and suppress all evidence seized from the safe.

Dated at Madison, Wisconsin, December 21, 2010.

> Respectfully submitted,
> JEREMY VISOCKY, *Defendant*
>
> */s/ Michael W. Lieberman*
> Michael W. Lieberman, Bar # 1059034

FEDERAL DEFENDER SERVICES
 OF WISCONSIN, INC.
222 West Washington Avenue, Suite 680
Madison, WI 53703
Tel: 608-260-9900
Fax: 608-260-9901
michael_lieberman@fd.org

## CERTIFICATE OF SERVICE

     I hereby certify that I caused a true and correct copy of the foregoing to be served via the Court's CM/ECF system to Assistant United States Attorney Rita Rumbelow, this 21st day of December, 2010.

                                   */s/ Michael W. Lieberman*
                                   Michael W. Lieberman

FEDERAL DEFENDER SERVICES OF WISCONSIN, INC.