IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 10-cr-152-wmc |
| ) | |
| JEREMY VISOCKY, ) | |
| ) | |
| Defendant. ) | |

GOVERNMENT'S OBJECTION TO THE MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

I.   INTRODUCTION

On January 11, 2011, Magistrate Judge Stephen L. Crocker recommended that this Court grant Visocky's motion to suppress evidence. Visocky's motion claimed that law enforcement's prolonged interference with his possessory interest in a gun safe was unreasonable under the circumstances, and, therefore violated the Fourth Amendment's proscription against unreasonable searches and seizures. As set forth below, the United States objects to many of the magistrate judge's factual findings, as well as his legal conclusions, and asks this Court to deny Visocky's motion to suppress.

II.  ARGUMENT

   A.   The Initial, and Prolonged, Seizure Of The Gun Safe Was Reasonable Because Visocky Abandoned His Possessory Interest In It

The government respectfully disagrees with the magistrate judge's conclusion that Visocky did not abandon his possessory interest in the safe, and although the government agrees with the magistrate judge's conclusion that the initial seizure of the

gun safe was reasonable, it disagrees with his findings that MPD engaged in a ruse by only seizing items that had potential evidentiary value against Visocky.

Remembering that the test for abandonment is an objective one, this Court should consider only "the external manifestations of the defendant's intent as judged by a reasonable person possessing the same knowledge available to the searching officer. " *United States v. Alexander*, 573 F.3d 465, 472 (7th Cir. 2009).

On page three of the magistrate judge's report, he stated that "Over the course of the evening, one of the officers actually visited Visocky twice at work."  That is true, but the magistrate judge's report fails to also acknowledge that the police attempted to contact Visocky on *three* occasions - not two.  Before going to the Annex, MPD called there and told Visocky he needed to return home, and that it *was a matter of public safety.* (Emphasis added; Document #14-6, Dexter report, p. 3).

Although the magistrate judge ultimately concluded that it was reasonable for MPD to seize the safe initially, he completely ignored the issue of public safety.  Rather, the magistrate judge focused on the fact that the police left behind a television, a computer, and a Playstation.  MPD never claimed they took Visocky's safe, and loose rounds of ammunition, for any reason other than public safety.  Leaving a television, computer, and Playstation behind in an unsecured residence did not present a danger to the public.  Moreover, those were not the items the home invaders were interested in, contrary to the magistrate judge's assertion that the computer, television, and game console were items that were significantly more appealing to crime scene vultures than

2

a large, heavy gun safe. (R. 22, p. 5).

The magistrate judge also focused on the fact that "there is no evidence in this record that the police ever told Visocky that they had taken his property, or told him that they took it to protect it from further burglary attempts, or told him that he was free to arrange to retrieve his property from the police at his convenience." (R. 22, p. 6).

This finding ignores two facts. First, Visocky's friends knew the safe was still in the apartment building when the police arrived. Second, the police were told by Visocky's lawyer to leave Visocky alone - he did not want to talk to them. Visocky's continued refusal to go home, and his refusal to talk with and cooperate with the police as alleged victim of a home invasion spoke volumes.

One of the responding officers, Investigator Thomas Parr, had 13.5 years experience in the United States Army and based on that experience, he did not believe that high-caliber ammunition should be left in an unsecured house. Investigator Parr also noted that they could not *positively* identify the safe as belonging to Visocky. Contrary to the magistrate judge's conclusion, that is not an "incredible" statement. Visocky had not positively identified the safe as his, and his friends said they didn't live there. It would have been reckless and irresponsible for the officers to leave behind high capacity ammunition and the gun safe, which was the apparent object of the *armed* home invasion, in an unsecured residence at approximately 1:18 a.m.

Visocky's external manifestations were that he repeatedly ignored MPD's pleas regarding public safety. He also never, although represented by counsel, sought return

of the gun safe. Those external manifestations support a finding that he abandoned his possessory interest in the gun safe.

      B.      <u>The Gun Safe Is Evidence Of The Armed Home Invasion</u>

The magistrate judge's finding that the gun safe was not evidence of the home invasion is also clearly erroneous. The investigation to determine the identities of the armed home invader(s) continues to this day. The government attached a copy of an October 2010 crime lab submittal form to its brief in opposition which shows that MPD is still investigating that crime. Just because the police swabbed the safe at the scene and dusted it for prints does not mean it no longer has evidentiary value in the home invasion investigation. Because the police department treated the gun safe as evidence of a separate crime, the 30 day delay between seizure and obtaining a warrant was not constitutionally unreasonable.

      C.      <u>*Herring* Does Not Support Suppression</u>

The magistrate judge correctly stated that the current rule regarding suppression is:

> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the judicial system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.

*Herring v. United States,* 555 U.S. 135, 129 S. Ct. 695 (2009).

The fact that a Fourth Amendment violation occurred - i.e., that a search or arrest was unreasonable - does not necessarily mean that the exclusionary rule

applies. *Herring*, 129 S. Ct. at 700, citing *Illinois v. Gates*, 462 U.S. 213, 223 (1983). Indeed, "exclusion has always been our last resort, not our first impulse, " *Hudson v. Michigan*, 547 U.S. 586, 591, 126 S. Ct. 2159 (2006), and Supreme Court precedent establishes important principles that constrain application of the exclusionary rule. *Herring*, 129 S. Ct. at 700.

First, the exclusionary rule is not an individual right and applies only where it "results in appreciable deterrence." *Id.*, quoting *United States v. Leon*, 468 U.S. 897 (1984). In *Herring*, the Court reviewed its prior decisions which held that to the extent that application of the exclusionary rule could provide some incremental deterrent, that possible benefit must be weighed against [its] substantial social costs, *citing Illinois v. Krull*, 480 U.S. 340, 107 S. Ct. 1160 (1987). The principal cost of applying the rule is, of course, letting guilty and possibly dangerous defendants go free, something that offends basic concepts of the criminal justice system. The rule's costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those urging its application. *Herring*, 129 S. Ct. at 701 (citations omitted).

The magistrate judge's legal analysis, including his reliance on the Ninth Circuit's opinion in *United States v. Son Ja Cha*, 597 F.3d 995 (9th Circ. 2010), incorrectly applies the Supreme Court's decisions in *Herring* and *Hudson*. In *Son Ja Cha,* the Ninth Circuit held that the seizure of a *home* was unreasonably long - a home the defendant sought entry into during the seizure, therefore Cha's possessory interests were quite strong instead of "virtually nonexistent." 597 F.3d at 1001. As stated repeatedly above,

5

Visocky never *exhibited* any possessory interest in the gun safe.

Significantly, the magistrate judge's report concludes that the MPD officers did not engage in intentional misconduct by seizing and holding the gun safe, and there is no finding of reckless or grossly negligent conduct.  Yet, the magistrate judge contends the police behavior was objectively unreasonable, "systemic," capable of being repeated, and therefore capable of being deterred department-wide in the future.

There is nothing in the record to suggest, based on this very unique fact situation, that MPD's behavior in this case is part of a systemic problem.  The magistrate judge did not provide any examples of cases where MPD seized property, had it sit around for a while, and then obtained a federal search warrant for it.  Assuming, *arguendo*, that some violation occurred, it cannot be labeled systemic.

Finally, this Court should ignore the magistrate judge's suggestion that the crime charged is not serious.  By stating that the SKS rifle is not contraband *ipse*, and by contending that Visocky is not "obviously and conclusively" a prohibited person, the magistrate judge appears to suggest that the nature of the crime charged should be balanced against a need to ensure that local law enforcement officers understand and comply with the warrant requirements of the Fourth Amendment.  Those observations, as well as the magistrate judge's theory that "the police and government suspect that there is more to Visocky's story than the one-sentence indictment would suggest," are irrelevant to the analysis.

In light of all the circumstances here and the lack of any evidence that the police

6

engaged in intentional misconduct, *Herring* does not support application of the exclusionary rule.

III. <u>CONCLUSION</u>

For the foregoing reasons, the United States respectfully asks this Court to reject the magistrate judge's recommendation and deny Visocky's motion to suppress.

Dated this 21st day of January 2011.

                        Respectfully submitted,

                        JOHN W. VAUDREUIL
                        United States Attorney

                        By:    /s/

                        _____
                        RITA M. RUMBELOW
                        Assistant U. S. Attorney