IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

                                                                 ORDER

v.                                                        10-cr-152-wmc

JEREMY VISOCKY,

        Defendant.

---

Defendant Jeremy Visocky moves (1) to dismiss his indictment as an unlawful marijuana user in possession of a firearm on the grounds that 18 U.S.C. § 922(g)(3) violates the Second Amendment; and (2) to suppress the firearm itself because it was kept within a safe police seized and then held for 30 days before they sought a warrant to open it. In a Report and Recommendation entered on January 11, 2011 (dkt. #22), Magistrate Judge Crocker recommended that this court deny Visocky's motion to dismiss the indictment consistent with *United States v. Yancey*, 621 F.3d 681, 687 (7th Cir. 2010), in which the Seventh Circuit rejected a nearly identical constitutional challenge to the same charging statute. Because this motion appears intended only to preserve a claim should *Yancey* be reversed, and no objection has been made to this portion of Judge Crocker's recommendation, it is adopted and Visocky's motion to dismiss the indictment will be denied.

Judge Crocker also recommended that Visocky's motion to suppress evidence be granted because: (1) Visocky did not abandon his property; (2) the holding of the safe by the police for thirty days was unreasonable, even if the initial seizure of the safe was not; and (3) suppression of the gun eventually found in the safe is the appropriate remedy. The government objects to each of these findings. After review, this court concludes the government has failed to show that the magistrate judge's findings of fact, conclusions of law or recommendations are erroneous or

that a de novo determination of facts is necessary pursuant to 28 U.S.C. § 636(b)(1)(C). Specifically, the court agrees with Judge Crocker's findings in support of his recommendation to grant Visocky's suppression motion. The court, therefore, adopts the Report and Recommendation as discussed in this decision and grants Visocky's motion to suppress the evidence ultimately obtained from the safe.

## FACTS

The Report and Recommendation contains a detailed summary of the facts relevant to Visocky's motion to suppress, none of which appear to be in dispute. The court will not repeat those facts here, instead it adopts the magistrate judge's factual findings and addresses only those facts bearing directly on the government's objections below.

## OPINION

A.  CLAIM OF ABANDONMENT OF SAFE

To demonstrate that Visocky abandoned his safe, the government must prove by a preponderance of the evidence that Visocky's voluntary words or actions would lead a reasonable person in the officer's position to believe that Visocky relinquished his property interests in the safe. *United States v. Alexander*, 573 F. 3d 465, 472 (7th Cir. 2009). The magistrate judge found that the government did not meet this burden, and this court agrees. The government does not come close to proving abandonment. Indeed, the conduct here suggests a highly questionable exercise of police power or a surprising lack of sophistication regarding its limits.

The five-foot tall, green metal gun safe was found lying on its side on a blanket in the hallway outside the front entrance to Visocky's apartment, the burglars apparently having been

2

unable to drag the safe further because of its weight. As the magistrate judge observed, there is little, if any, evidence to credit the claim that police were unsure if the massive safe came from the nearby apartment that had just suffered a home invasion, especially when police also claim to have seized the safe to insure that it not be subsequently stolen from this same unsecured apartment and as evidence of the break in. Indeed, without deciding whether taken to protect the public, to secure evidence of the home invasion and/or to put Visocky in a catch-22 with respect to claiming the contents, it is reasonable (if not irresistible) for the court to conclude that the officers believed that the safe had come from Visocky's apartment and had been abandoned not by Visocky, but by burglars.

The government nevertheless posits at least three supposed grounds to support its claim of abandonment, none of which are availing. First, the government argues that Visocky abandoned his property interest in the safe by refusing to identify it as his property after being notified by police of the burglary. As the magistrate judge found, however, the officers failed to notify Visocky that they took or were keeping the safe. While Visocky might have discovered that the police and not the burglars had taken his safe, there is no objective evidence of this to support the government's supposition on this point.[1]

Second, the government argues that Visocky's refusal to talk to the police is evidence that he intended to abandon the safe. After Visocky's lawyer contacted the police to tell them Visocky did not want to talk to them, the police had the option of informing the lawyer that the safe was being taken, asking him if the safe belonged to Visocky or, at least, giving him the

---

[1] The government points out that his traumatized friends *may* have known and told him, but offers no evidence that they were ever aware the safe had been moved, having after all been surprised and held hostage by an armed intruder after arriving at the apartment to let out Visocky's dog.

3

option to claim it during the ensuing 30 days. There is no evidence that Visocky was ever given this option directly or through his counsel, much less that his lawyer or he ever affirmatively disclaimed ownership in the safe.

Third, the government argues that Visocky abandoned the safe -- and presumably all other contents in his apartment -- by failing to return home on the night of the burglary despite repeated requests by police that he do so "*as a matter of public safety*." (Government objection, pg. 2 (emphasis in original).) This might carry more weight if there were evidence that Visocky had actually abandoned his apartment, but his refusal to return home for hours following a home invasion, even after indicating that he would, surely does not constitute a presumptive abandonment, much less a legal one. Here, there is no evidence Visocky did not return the following day, but rather that he declined the officers' requests to return sooner, which was his right.

In light of this sparse record, the court readily adopts Judge Crocker's finding that Visocky's voluntary words or actions would and should not lead a reasonable person to believe that he had relinquished his property interest in the safe. Further, there was little, if any, impediment to police contacting Visocky's attorney to ask if the safe belonged to Visocky or, at least, to give him formal notice of his right to retrieve it. For these reasons, the court agrees with Judge Crocker that the government failed to prove Visocky abandoned his safe.

B. REASONABLENESS OF HOLDING THE SAFE FOR THIRTY DAYS

This court also agrees with, and both parties accept, Judge Crocker's finding that the police acted reasonably in seizing the safe immediately following the home invasion. The government, however, challenges his finding that the police acted unreasonably in holding the safe for thirty days before seeking a warrant to search its contents. Once the exigencies that

4

justified a warrantless seizure have disappeared, the police must seek a search warrant promptly. In *United States v. Mitchell*, 565 F. 3d 1347, 1352-53 (11th Cir. 2009), the Court found that it was unreasonable for the government to wait 21 days after seizing defendant's computer to obtain a search warrant. This case supports Judge Crocker's conclusion that it was unreasonable to hold the safe 30 days before pursuing a search warrant, at least in the absence of any meaningful change in the circumstances from the time of the original seizure

In its objection, the government's only proffered justification for waiting 30 days before seeking a warrant to search the safe was its role as evidence of the home invasion. While this may have provided sufficient basis to seize the safe in the first place, the court cannot fathom why the ongoing investigation would have prevented officers from seeking a warrant for the contents of the safe with relative dispatch, nor does the government offer an explanation. In fact, the government states in its objection that the investigation continued until October 2010, long after the warrant was obtained for the contents of the safe on August 24, 2010. Further, the government cites to no legal support for the police retaining for thirty days an item seized in the aftermath of a burglary not itself used to carry out, or the product of, an underlying crime (*e.g.*, a gun or ill gotten proceeds). Nor is there evidence in the record of any impediment or intervening facts justifying this delay.

In *Mitchell*, the court held that the three-week delay caused by an officer's attendance at a training seminar was not reasonable. *Id.* at 1352- 53. In this case, however, the government offers no reason for the delay. As Judge Crocker states, "They parked Visocky's safe in the evidence room for 30 days and did nothing." (Dkt. #22, p. 8.) By any standard, thirty days is too long without a reason for the delay or, at least, notice to the likely owner that they are holding his safe on the assumption he had abandoned it. The court, therefore, also adopts Judge

5

Crocker's finding that holding of the safe without action by the police for 30 days was unreasonable.

## C.  APPROPRIATENESS OF SUPPRESSION

Of course, all of these findings would arguably be meaningless unless some consequence follows.  Judge Crocker recommends that consequence be suppression of any evidence obtained from the safe and the government objects.  The Fourth Amendment protects citizens from "unreasonable searches and seizures."  Further, the purpose of the Fourth Amendment is "to strike a balance between the interest of the individual in being left alone by the police and the interest of the community in being free from the menace of crime." *United States v. Burton*, 441 F.3d 509, 511-12 (7th Cir. 2006) (internal quotation omitted).

> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the judicial system.  As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances, recurring or systemic negligence.

*Herring v. United States*, 555 U.S. 135; 126 S.Ct. 695, 702 (2009).

Consistent with *Herring*, a central inquiry is whether excluding the evidence seized in the safe can meaningfully deter deliberate, reckless or grossly negligent conduct, or recurring or systemic negligence.  *Id.* at 701 ("the extent to which the exclusionary rule is justified by these deterrence principles varies with the culpability of the law enforcement conduct").  Judge Crocker characterized the police officers' conduct as a mistake of law, because the officers claimed not to know they were legally required to seek a warrant post haste or return the property.  Further, he found this conduct was "objectively unreasonable, systemic, capable of being repeated, and therefore capable of being deterred department-wide in the future." (Dkt.

6

#22, pp. 12-13.) The government objects, arguing that there is nothing in the record to suggest that the police officers conduct is part of a systemic problem. This court disagrees.

Here, the government asks that Madison police officers be excused for holding Visocky's property for thirty days without seeking a warrant, notifying its owner of their possession of his safe or returning it. The reason the police officers' offer to justify their action is simply that they were unaware of the law. If this explanation is to be believed, it would suggest that other officers in the department are also unaware of the law. Thus, the problem would be systemic and capable of being repeated. Of course, if the officers were acting for other reasons not disclosed, their culpability is heightened and so, too, the need for deterrence. Moreover, suppression of the evidence in this case would have some deterrence to police hanging on to people's property generally for an unreasonable amount of time. The deterrence prong, therefore, weighs in favor of exclusion.

Under *Herring*, the court must balance any deterrence value against the price paid by the judicial system. Here, burdening the police to give sufficient notice to an owner of their holding of seized property is no great burden; nor absent some credible impediment to doing so, is seeking a warrant to inspect the property or to return it. Moreover, while the court does not minimize the nature of Visocky's crime, suppressing the evidence in this case would not necessarily let a dangerous criminal walk free. The firearm found in the safe was a powerful assault rifle but a legal weapon if possessed by a non-prohibited person. Of course, if Visocky was an unlawful user of marijuana as alleged by the government, he would be prohibited from owing any kind of firearm. 18 U.S.C. § 922(g)(3). The court agrees with Judge Crocker that the objective evidence in the record does not suggest that the societal cost of requiring notice and/or prompt, reasonable efforts to obtain a warrant, or letting Visocky walk away from this

prosecution, outweighs the need to deter local law enforcement officers from failing to seek timely warrants generally.

Applying the *Herring* factors, the court is persuaded that the evidence found in the safe must be suppressed. Thus, it will grant Visocky's motion to suppress this evidence.

## ORDER

IT IS ORDERED that:

(1) The Magistrate Judge's recommendation is ADOPTED;

(2) Defendant's motion to dismiss the indictment is DENIED; and

(3) Defendant's motion to suppress the evidence is GRANTED.

Entered this 9th day of May, 2011.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge